## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TANYA TITO,

          Appellant,

        v.

DEPARTMENT OF THE INTERIOR,

          Agency.

DOCKET NUMBER
SF-0752-15-0684-I-1

DATE: February 28, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Thomas R. Wickwire</u>, Esquire, Fairbanks, Alaska, for the appellant.

<u>Kevin D. Mack</u>, Esquire, Sacramento, California, for the agency.

<u>Rachel Weighaus</u>, Washington, D.C. for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Limon recused himself and
did not participate in the adjudication of this appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which sustained the charge of possessing a firearm in a Federal facility without authorization, found that she did not prove any of her affirmative defenses, and upheld the removal penalty. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to supplement the administrative judge's analysis of the claim of reprisal for whistleblowing disclosures and protected activity and to clarify the administrative judge's disparate penalty analysis. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.

**BACKGROUND**

¶2      The following background information, as recited in the initial decision, is generally undisputed. Initial Appeal File (IAF), Tab 45, Initial Decision (ID). The appellant was employed at the agency as an Administrative Officer. ID at 2. On or around October 24, 2014, the appellant received a purple 0.22 caliber Beretta handgun as a birthday present. *Id*. On October 27, 2014, the appellant brought the handgun to work at the Tetlin National Wildlife Refuge (TNWR) in

Tok, Alaska, to show her coworkers. *Id.* On December 9, 2014, the appellant brought the same handgun in one of her bags to the Fish and Wildlife Service regional office in Anchorage. *Id.* The next morning, at the agency's request, officers from the Federal Protective Service (FPS) initiated an inquiry into the matter, and the appellant was placed on administrative leave. ID at 3. Following an investigation, FPS issued the appellant a U.S. District Court Violation Notice that charged her with violating 41 C.F.R. § 102-74.440, by knowingly bringing a handgun into a Federal facility on December 9, 2014. *Id.* The appellant paid a $125.00 fine in lieu of appearing in court. *Id.*; IAF, Tab 6 at 195.

¶3     The agency proposed and effected the appellant's removal based on the two incidents described above. ID at 3; IAF, Tab 6 at 40-46, 149-55. After the appellant filed a Board appeal, the agency rescinded the removal, and the administrative judge dismissed the appeal as moot over the appellant's objection.[2] ID at 3-4; *Tito v. Department of the Interior*, MSPB Docket No. SF-0752-15-0523-I-1, Initial Decision (Jul. 10, 2015).

¶4     On June 5, 2015, the agency again proposed the appellant's removal based on a single charge of possessing a firearm in a Federal facility without authorization, and the charge included two specifications. ID at 4; IAF, Tab 6 at 28-31. The appellant did not reply to the proposal notice, and the agency sustained the charge and removed the appellant, effective July 8, 2015. ID at 4; IAF, Tab 6 at 19, 21-26.

¶5     The appellant filed a Board appeal. ID at 5; IAF, Tab 1. A hearing was held. ID at 5; Hearing Transcripts (HTs). The administrative judge issued an initial decision that sustained the two specifications and the charge of possessing a firearm in a Federal facility without authorization, concluded that the appellant did not prove any of her affirmative defenses, and upheld the removal. ID

_____

[2] Neither party filed a petition for review of the initial decision, and the initial decision became final on August 14, 2015.

at 6-76. The appellant has filed a petition for review, the agency has filed a response, and the appellant has filed a reply. Petition for Review (PFR) File, Tabs 1, 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>We agree with the administrative judge that the agency proved the charge and both specifications.</u>

¶6    The appellant did not challenge below or on review the administrative judge's finding that the elements of the charge included (1) possession of a firearm, (2) in a Federal facility, and (3) without authorization, or that the charge did not include an intent element. ID at 6-7; IAF, Tab 24 at 2-3; PFR File, Tab 1 at 16. The appellant also does not dispute that she brought her handgun into the Federal facilities on the dates in question or that carrying a firearm was not part of her duties. ID at 7-8; PFR File, Tab 1 at 4.

¶7    The appellant challenges the administrative judge's conclusion that she was not authorized to bring the firearm into the TNWR facility on October 27, 2014.[3] PFR File, Tab 1 at 4. Instead, she asserts that she had apparent authorization to carry a firearm because she had seen numerous other individuals carrying firearms in the facility who were not disciplined. *Id.* at 6-7. The record reflects the administrative judge's conscientious consideration of the witness testimony and documentary evidence, including the appellant's position description. ID at 6-9; IAF, Tab 6 at 249-55. We discern no error with the administrative judge's conclusion that the appellant was not authorized to bring in her personal firearm into the respective Federal facilities on either date. ID at 6-9 & n.6. Accordingly, we affirm the administrative judge's decision to sustain both specifications and the charge.

---

[3] In her discussion of the charge, the appellant raises issues of notice, intent, and disparate treatment, and she asserts that the penalty was too severe for the second specification. We will address these issues in our penalty analysis, below.

<u>We agree with the administrative judge that the appellant did not prove any of her affirmative defenses.</u>

¶8    The appellant does not challenge on review the administrative judge's conclusion that she did not prove her affirmative defenses of harmful procedural error, laches, or prohibited personnel practices pursuant to 5 U.S.C. § 2302(b)(2) and (11).  ID at 9-21.  Because the appellant is not pursuing these claims on review, we need not analyze them in this order.  *See* 5 C.F.R. § 1201.115 (stating that the Board normally will consider only issues raised in a timely filed petition or cross petition for review).  Accordingly, we affirm the administrative judge's decision regarding these affirmative defenses.

¶9    The appellant's petition for review appears to primarily challenge the administrative judge's analysis of her claim of reprisal for whistleblowing disclosures and/or protected activity.   PFR File, Tab 1 at 17-20.   When whistleblower retaliation claims are made in the context of an otherwise appealable action, as here, the appellant must prove by preponderant evidence[4] that she made a protected disclosure pursuant to 5 U.S.C. § 2302(b)(8) or engaged in protected activity as defined in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D) and that the disclosure or protected activity was a contributing factor in the personnel action(s) at issue.[5]   *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 49; *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 12 (2015); *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 12 (2015); *see* 5 U.S.C. § 1221(e)(1).  If the appellant makes this showing, the burden shifts to

---

[4] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

[5] We have reviewed the relevant legislation amending the whistleblower protection statutory scheme enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

the agency to prove by clear and convincing evidence[6] that it would have taken the personnel action absent the protected disclosure or activity. *Pridgen*, 2022 MSPB 31, ¶ 49; *Ayers*, 123 M.S.P.R. 11, ¶ 12; *Alarid*, 122 M.S.P.R. 600, ¶ 12; *see* 5 U.S.C. § 1221(e)(2).

¶10    In the initial decision, the administrative judge found that the appellant made a protected whistleblowing disclosure when she orally disclosed to her former supervisor that his plan to purchase a quantity of oil from a former agency employee was precluded by purchasing rules and regulations.  ID at 25-31.  The administrative judge also found that the appellant's January 14, 2014 memorandum to the Office of Inspector General (OIG) that was critical of the Human Resources Manager and four Human Resources Specialists constituted activity protected by 5 U.S.C. § 2302(b)(9)(C).[7]    ID at 36-37; IAF, Tab 6 at 81-84.  He further found that the appellant proved that her whistleblowing disclosure and protected activity were a contributing factor in the agency's decision to remove her.[8]  ID at 37-39.  The administrative judge found, however, that the agency proved by clear and convincing evidence that it would have removed her absent her whistleblowing disclosure or protected activity.   ID at 39-47.

¶11    On review, the appellant argues that the administrative judge improperly analyzed the agency's clear and convincing burden.  PFR File, Tab 1 at 11, 17-20. In determining whether an agency has shown by clear and convincing evidence

---

[6] Clear and convincing evidence "is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established." 5 C.F.R. § 1209.4(e).

[7] The administrative judge concluded that the appellant did not prove that her disclosures regarding a violation of the agency's housing manual and her former supervisor's directive to teach only creationism were protected whistleblowing disclosures.  ID at 31-36.  The appellant does not challenge these findings on review, and we affirm the administrative judge's findings in this regard.

[8] The agency does not challenge this finding, and we affirm it herein.

that it would have taken the same personnel action in the absence of a whistleblowing disclosure or protected activity, the Board will consider all of the relevant factors, including the following factors ("*Carr* factors"):  (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated.  *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Alarid*, 122 M.S.P.R. 600, ¶ 14.[9]  The appellant does not challenge the administrative judge's conclusion that the agency's evidence was "very strong" and "weighed significantly" in its favor, ID at 39-40, and we affirm that finding.

¶12     Regarding the second *Carr* factor, the administrative judge noted that the proposing official—who was the appellant's supervisor—could have a strong motive to retaliate because he was involved in the oil transaction that was the subject of the appellant's whistleblowing disclosure and that transaction later became the subject of agency criminal and non-criminal investigations.  ID at 41. The administrative judge made demeanor-based credibility determinations in favor of the proposing official in part because he (the proposing official) initiated the criminal inquiry and had no knowledge that the appellant made a disclosure regarding the transaction.  ID at 41-42.  The administrative judge further found that the Human Resources Manager could have a somewhat strong motive to retaliate if she knew of the appellant's OIG disclosure.  ID at 42.  The

---

[9] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues.  However, pursuant to the All Circuit Review Act (Pub. L. No. 115-195), appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction.  *See* 5 U.S.C. § 7703(b)(1)(B).  Therefore, we must consider these issues with the view that the appellant may seek review of this decision before any appropriate court of appeal.

administrative judge also found that there was, at most, a negligible motive to retaliate that could be imputed to the deciding official because of the proposing official's involvement in the oil transaction and the involvement of the Human Resources Manager in the removal action.  ID at 46.

¶13    The appellant's arguments on review regarding the motive to retaliate factor appear to focus on the proposing official and the Human Resources Manager.  For instance, she asserts that the proposing official was motivated to "get her" well before the two handgun incidents occurred.  PFR File, Tab 1 at 18.  As support for this assertion, however, she focuses on evidence that the administrative judge considered in his discussion of her claim of reprisal for activity protected by 5 U.S.C. § 2302(b)(10),[10] including her participation in the Tok Community Umbrella Corporation (TCUC), the fact that several individuals involved in the dispute between the TCUC and the Tok Chamber of Commerce told the proposing official to fire her, and the proposing official drafted, but did not issue, a proposed 7-day suspension based on community complaints about her.  PFR File, Tab 1 at 18 (citing ID at 49-50).  By including such evidence under the heading "Retaliation for Whistleblowing," however, the appellant is improperly conflating the two different claims.  Because the allegations relating to her section 2302(b)(10) claim are distinct from the allegations relating to her claim of reprisal for whistleblowing disclosures and protected activity, such allegations do not change our view of the administrative judge's analysis of the motive to retaliate factor.[11]

---

[10] Section 2302(b)(10) makes it a prohibited personnel practice to "discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others."

[11] Even if we construe the appellant's assertion as a challenge to the administrative judge's evaluation of her claim of retaliation for activity protected by section 2302(b)(10), a different outcome is not warranted.  The initial decision reflects the administrative judge's careful consideration of the relevant case law and the

¶14　　　In the initial decision, the administrative judge credited the testimony of the proposing official as "direct, forthright, and persuasive" regarding his decision to take responsibility for the oil transaction, and he rejected as speculative the appellant's attorney's suggestion that the proposing official's acceptance of responsibility was a ploy to protect the appellant's former supervisor. ID at 41-42 & n.15. The Board defers to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board overturns such determinations only when it has "sufficiently sound" reasons for doing so. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant has not presented any such reasons. We have considered her assertion that the initial decision does not explain why the proposing official's motive to protect the appellant's former supervisor and the agency's "interest in maintaining control over subordinates" should not be imputed to the proposing official as a possible reason for the proposing official taking responsibility for the oil transaction that the former supervisor initiated. PFR File, Tab 1 at 20. However, there is no evidence to support this assertion, and we find it unavailing.

¶15　　　We have considered the appellant's contention that the administrative judge should have penalized the agency—by applying the "usual inference [that the agency was] trying to hide something"—because the agency did not call the Human Resources Manager as a witness. *Id.* at 19. The appellant does not indicate on review when she requested below that the administrative judge issue such a sanction, and we could not find such a request in the record. Nevertheless, we are not persuaded that any such sanction is necessary to serve the ends of

---

evidence, and we discern no error with his conclusion that the appellant failed to prove that her TCUC activity played a role in her removal or that the removal action constituted a prohibited personnel practice as described in 5 U.S.C. § 2302(b)(10). ID at 47-53.

justice. 5 C.F.R. § 1201.43. Indeed, as noted above, the administrative judge acknowledged that the Human Resources Manager could have a "somewhat strong" motive to retaliate if she was aware of the disclosure. Based on the testimony of the proposing and deciding officials, however, the administrative judge found that there was nothing in the record to suggest that the Human Resources Manager influenced either of them. ID at 42-45; HT 1 at 75 (testimony of the proposing official), 282-83, 285-87, 296-97 (testimony of the deciding official). Under these circumstances, we find that it was unnecessary for the Human Resources Manager to testify regarding any of the issues in this matter, and we decline to sanction the agency for not calling her as a witness.

¶16 Regarding the third *Carr* factor, the administrative judge noted in the initial decision that the agency did not present any evidence regarding this factor, the charged misconduct was unique to the experience of both the proposing and deciding officials, and none of the purported comparators identified by the appellant were valid comparators. ID at 45-46. He therefore concluded that this factor was of "relatively little import." ID at 46. We agree. The absence of evidence on the third *Carr* factor can render that factor neutral, but an agency's failure to produce such evidence if it exists may prevent it from carrying its burden overall. *Soto*, 2022 MSPB 6, ¶ 18; *see Whitmore v. Department of Labor*, 680 F.3d 1353, 1374-75 (Fed. Cir. 2012). Thus, the administrative judge correctly determined that the absence of evidence on the third *Carr* factor in the record is a neutral factor. *Soto*, 2022 MSPB 6, ¶ 18; *see Rickel v. Department of the Navy*, 31 F.4th 1358, 1365 (Fed. Cir. 2022) (holding that "[t]he lack of evidence on the third *Carr* factor appears neutral"). Overall, based on the administrative judge's findings regarding the strength of the agency's evidence as to *Carr* factors 1 and 2, and concurring with his analysis of *Carr* factor 3, we defer to the administrative judge's demeanor-based credibility determinations, and we agree with his conclusion that the agency proved by clear and convincing

evidence that it would have removed the appellant absent her whistleblowing disclosure and/or protected activity. ID at 39-47; *see Haebe*, 288 F.3d at 1301.

¶17    The appellant also asserts on review that the agency violated her due process and equal protection rights by punishing her for violating a rule for which she had no notice and for behavior that other people engaged in and for which they were not punished. PFR File, Tab 1 at 5, 8-10. Contrary to the appellant's assertion, we agree with the administrative judge that the appellant received minimum due process because the agency gave her advance notice of the charge against her, evidence that it relied upon to support the charge and penalty, and an opportunity to respond. ID at 11-13; *see Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985) (explaining that tenured public employees cannot be deprived of their property right in continued employment without due process of law, i.e., notice and an opportunity to respond). Additionally, the appellant's allegation that the agency treated her disparately to other employees, without a claim of prohibited discrimination, is an allegation of disparate penalties to be proven by the appellant and considered by the Board in determining the reasonableness of the penalty, but it is not an affirmative defense. *Vargas v. U.S. Postal Service*, 83 M.S.P.R. 695, ¶ 9 (1999). The appellant has not persuaded us that the administrative judge erred when he found that she did not prove an equal protection violation in this regard, ID at 13-14; however, we will address her disparate penalty claim in our penalty analysis, below.

We agree with the administrative judge that there was a nexus between the sustained misconduct and the efficiency of the service.

¶18    On review, the appellant challenges the administrative judge's nexus analysis and contends that the two incidents had a minimal effect on the efficiency of the service. PFR File, Tab 1 at 20-22; ID at 53-54. This argument is unavailing. For purposes of whether an agency has shown that its action promotes the efficiency of the service, the nexus requirement means there must be a clear and direct relationship between the articulated grounds for an adverse

action and either the employee's ability to accomplish his or her duties satisfactorily or some other legitimate Government interest. *Merritt v. Department of Justice*, 6 M.S.P.R. 585, 596 (1981), *modified by Kruger v. Department of Justice*, 32 M.S.P.R. 71, 75 n.2 (1987). Sufficient nexus exists between an employee's conduct and the efficiency of the service when the conduct occurred at work, as in this case. *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987); *see* HT 1 at 245 (testimony of the deciding official) (explaining that the appellant's conduct in the second incident was "very disruptive" because "many of [the employees] were concerned about the safety for the staff" and "people were unable to do their regular job until things were figured out"). Accordingly, we affirm the administrative judge's nexus analysis.

We agree with the administrative judge that the removal penalty is reasonable for the sustained misconduct.

¶19     The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). On review, the appellant challenges the administrative judge's evaluation of intent, notice, the consistency of the penalty with those imposed upon other employees for the same or similar offenses, and the agency's failure to apply progressive discipline. PFR File, Tab 1 at 6-17, 23-24. For the following reasons, a different outcome is not warranted.

¶20     The administrative judge discussed at length the appellant's contention that the agency treated her differently from several other agency employees and members of the public who brought firearms into the TNWR building or on an agency airplane without any consequences. ID at 66-71. The administrative judge noted that the alleged comparators did not engage in substantially similar misconduct—either because they were not agency employees or because they were authorized to carry firearms for survival, protection, or other work-related purposes—and any difference in treatment by the proposing and deciding officials

was not knowing or intentional because such prior conduct predated their roles as agency managers.  ID at 67-71.

¶21    In analyzing the appellant's disparate penalty claim, the administrative judge cited *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640 (2012), which, in turn, cited *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657 (2010), for the proposition that, to trigger the agency's burden to show a legitimate reason for the difference in treatment in a disparate treatment claim, there must be enough similarity between the nature of the misconduct and other factors to lead a reasonable person to conclude that the agency treated similarly situated employees differently.  ID at 67.  The Board has since overruled *Lewis* to clarify that, when analyzing disparate penalty claims, broad similarity between employees is insufficient to establish that they are appropriate comparators, and the relevant inquiry is whether the agency knowingly and unjustifiably treated employees who engaged in the same or similar offenses differently.  *Singh v. U.S. Postal Service*, 2022 MSPB 15 ¶¶ 9-18.  However, the administrative judge's discussion of the standard set forth in *Boucher* and *Lewis* was not prejudicial in this case because, as the administrative judge properly found, the appellant failed to satisfy even that less onerous standard.  ID at 67-71.

¶22    On review, the appellant does not contest the administrative judge's finding that the law enforcement officer who was authorized to carry firearms as part of his duties and the two nonemployees were not proper comparators.  PFR File, Tab 1 at 11-12.  She asserts, however, that there was a pattern of allowing employees to bring handguns into the building for social purposes.  *Id.* at 6, 11. Indeed, the record reflects that around Christmas 2013, J.E., who was a pilot, brought in a .22 rifle to the workplace to show other employees the gift that he had purchased for his son.  HT 2 at 8-9 (testimony of J.E.).  However, the circumstances surrounding this incident are easily distinguishable.  Importantly, as a pilot, J.E. was authorized to carry a firearm for protection, he was one of the "few employees that could open a handgun safe," and he "inventoried the

firearms." HT 2 at 5-7 (testimony of J.E.). Moreover, there was no evidence that anyone in management observed J.E. bringing in the rifle on that date or otherwise realized the circumstances under which he brought it to work. HT 1 at 149, 152, 155 (testimony of a Federal wildlife officer). There is also no evidence that J.E. brought in a personal firearm for non-work-related reasons on more than one occasion. Under these circumstances, the appellant failed to show that the agency knowingly or unjustifiably treated employees who engaged in similar offenses differently. *Singh*, 2022 MSPB 15, ¶ 14.

¶23 In discussing issues of condonation, notice, and intent, the administrative judge noted that the parties' accounts varied and he had to make credibility determinations. ID at 60 (discussing the relevant credibility factors as described in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987)). Regarding condonation, the administrative judge made demeanor-based credibility determinations in favor of the proposing official and another agency witness that the proposing official told the appellant on the day of the October 27, 2014 incident that she had to leave her handgun in her car and could not bring it into the office. ID at 60-62. Regarding notice, the administrative judge found that it was inherently improbable that the appellant, because of her Administrative Officer position, was unaware of any agency rules prohibiting firearms in the workplace absent authorization. ID at 63. The administrative judge made credibility determinations against the appellant based on her demeanor and stated that he was "left . . . with the impression [that] her testimony was contrived and less than forthright on the issues of notice and intent." ID at 64. He determined that the appellant's explanation that she did not know that it was a problem to bring her handgun to work on October 27, 2014, and "feigned inadvertence" regarding her decision to bring in her handgun to the regional office on December 9, 2014, "derogated common sense, [F]ederal law, the reality of her job duties and work environs." ID at 64-65. He further found "unworthy of credence" her accounts involving condonation, lack of notice, and lack of intent,

and concluded that such claims "rang hollow" because they were inconsistent with and/or contradicted by other evidence, inherently improbable, and/or appeared contrived and less than forthright.  ID at 64-65.  Here, too, the appellant has not identified sufficiently sound reasons for overturning the administrative judge's demeanor-based credibility determinations.  *Haebe*, 288 F.3d at 1301. Accordingly, we affirm the administrative judge's analysis of the issues of condonation, notice, and intent.

¶24    The appellant also contends on review that the penalty of removal was too harsh, particularly since the FPS deemed the second incident "inadvertent" because she paid a $125.00 fine in lieu of appearing in court.  PFR File, Tab 1 at 4-5.  There is no support for the appellant's assertion that FPS found that she had no intent to violate the law.  To the contrary, the violation notice itself identified the relevant offense as knowingly bringing a handgun into a Federal facility and, as support, specifically cites to a law, 41 C.F.R. § 102-74.440.[12] IAF, Tab 6 at 195.  Thus, this argument does not warrant a different outcome.

¶25    Finally, the appellant argues that the "author of the [proposal notice] has stated that progressive discipline was skipped because *she* believes it would not work"; instead, the appellant contends that her past evaluations and letters of support warrant a penalty less than removal.[13]   PFR File, Tab 1 at 23-24 (emphasis supplied).  This argument is confusing because the proposing official is

---

[12] "Federal law prohibits the possession of firearms or other dangerous weapons in Federal facilities . . . by all persons not specifically authorized by 18 U.S.C. § 930." The appellant does not contend that she was authorized by 18 U.S.C. § 930 to bring a firearm to work.

[13] To the extent that the appellant argues that the administrative judge erred in analyzing her harmful procedural error claim based on the agency's failure to follow its own internal policy regarding progressive discipline, PFR File, Tab 1 at 23-24, the appellant has not persuaded us that the administrative judge applied the wrong legal standard or improperly concluded that she failed to prove this affirmative defense, ID at 14-15.

male and the deciding official is female, and the appellant did not cite to any documentary evidence or testimony to support this assertion. We need not resolve this discrepancy, however, because the record reflects that both the proposing and deciding officials considered the appellant's potential for rehabilitation, the adequacy and effectiveness of alternative sanctions to deter such conduct in the future, and her two prior superior ratings.[14] IAF, Tab 6 at 22-24, 35-38.

¶26     We discern no error with the administrative judge's conclusion that the deciding official considered the relevant penalty factors and exercised her discretion within tolerable limits of reasonableness. ID at 54-75; *see, e.g.*, *Coleman v. Department of Defense*, 100 M.S.P.R. 574, ¶ 16 (2005) (noting that the Board has found removal to be a reasonable penalty when an appellant has violated an agency's security regulations by his unauthorized possession of a firearm on agency premises).

Conclusion

¶27     We have considered the appellant's remaining arguments on review but a different outcome is not warranted. The record reflects that the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on the issue of credibility. *See, e.g.*, *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v.*

---

[14] We recognize that the deciding official's analysis of the relevant penalty factors largely agrees with the proposing official's analysis. IAF, Tab 6 at 22-24. However, the administrative judge noted that the testimony of the deciding official regarding the penalty assessment was "direct, forthright, and persuasive," and he concluded that the deciding official "agreed with [the proposing official's] assessment upon conducting her own, independent assessment of the situation." ID at 44. The appellant has not persuaded us that the administrative judge's credibility determination or his conclusion was in error. *See Haebe*, 288 F.3d at 1301.

*Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same). Accordingly, we affirm as modified the administrative judge's decision to sustain the charge and both specifications, to find that the appellant did not prove any of her affirmative defenses, and to uphold the removal penalty.

## NOTICE OF APPEAL RIGHTS[15]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S.

---

[15] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a

representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[16]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[16] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:            /s/ for

           Jennifer Everling
           Acting Clerk of the Board

Washington, D.C.